In the Matter of Arbitration Between Ringgold Area School District, Donora Senior High School and Ringgold Education Association. Ringgold School District, Appellant.

Argued December 3, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*George B. Stegenga*, for appellants.

*Daniel R. Delaney*, with him *Watzman, Levenson & Snyder*, for appellee.

OPINION BY JUDGE BLATT, April 7, 1976:

The Ringgold Area School District (District) entered into a collective bargaining agreement (agreement) with the Ringgold Education Association (Association) on July 1, 1973 pursuant to the Public Employe Relations Act[1] (PERA). A grievance was filed by a Donora Senior High School teacher, represented by the Association, and the grievance was submitted to arbitration. The arbitrator's award was in favor of the grievant and the District has now appealed to this Court pursuant to Pa. R.J.A. No. 2101.

Until September of 1973, the District maintained a practice of granting leaves of absence to teachers for attendance at Pennsylvania State Education Association (PSEA) conferences and meetings without salary, with the District employing a substitute teacher for the school days involved. Beginning in September of 1973, the District, through "Acting Superintendent" Conte,[2] entered into an oral arrangement with the Association which provided that no deductions would be made from the salaries of teachers granted leaves of absence for attendance at PSEA conferences and that the Association would reimburse the District for wages paid to the substitute teachers employed to replace such teachers during these leaves of absence.[3] This arrangement lasted for one year,

---

1. Act of July 23, 1970, P. L. 563, *as amended*, 43 P. S. §1101.101 et seq.

2. The arbitrator points out that it is unclear whether Mr. Conte was "Acting Superintendent" or "Director of Secondary Education," but we do not find the distinction significant here.

3. The Association agreed to this change because, apparently, under the original practice, it would reimburse the teachers for deducted wages, which would be an amount equal to or in excess of the $35 per day substitute teacher salary. Therefore, a benefit in the amount of the difference between a regular teacher's salary and a substitute teacher's salary accrued to the teachers or the Association (depending on the amount the Association reimbursed to the teachers under the original practice).

through the 1973-1974 school year, and thereafter, beginning in September 1974, the District returned to the prior practice, as detailed above. The grievant requested leave in the fall of 1974 for attendance at a PSEA conference and, when her request was granted without pay, instituted this action by filing a grievance.

The issue presented here is whether or not the District could unilaterally return to its prior practice regarding payment to teachers (and substitutes) when it granted leaves of absence for attendance at PSEA conferences.[4]

It is clear that Pa. R.J.A. No. 2101 provides this Court with subject matter jurisdiction over an appeal from an arbitrator's award made pursuant to a collective bargaining agreement. *County of Franklin v. American Federation of State, County and Municipal Employees*, 21 Pa. Commonwealth Ct. 379, 346 A.2d 845 (1975) ; *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 17 Pa. Commonwealth Ct. 231, 331 A.2d 921 (1975).

It is especially clear that the standard of review here is the so-called "essence test," which provides that the award of an arbitrator, commissioned pursuant to a collective bargaining agreement, must draw its "essence" from that agreement. The arbitrator is restricted to an interpretation and application of the agreement, and the award draws its "essence" from the basic agreement if it is in any way rationally derived therefrom. Only when there is a manifest disregard of the agreement may the reviewing court disturb the award. *County of Franklin,*

---

4. The Association has not questioned the right of the District to grant leaves of absence *without pay* to teachers attending PSEA conferences, as it seeks only to enforce the practice of full payment to teachers and reimbursement by the Association of substitutes' salaries. The arbitrator properly recognized that the District has a right to exercise its discretion regarding the approval or disapproval of the subject leaves, as long as it does not discriminate.

*supra; County of Allegheny v. Allegheny County Prison
Employees Independent Union,* 20 Pa. Commonwealth Ct.
173, 341 A.2d 578 (1975) ; *Teamsters Local Union 77 v.
Pennsylvania Turnpike Commission,* 17 Pa. Commonwealth Ct. 238, 331 A.2d 588 (1975).

The arbitrator sustained the grievance here, based
upon his finding that an oral agreement had been reached
between the District, through Conte, and the Association
and that the District had "ratified" this agreement by effectuating its provisions for the school year 1973-1974.[5]
We believe that the arbitrator's award, based on this alleged oral agreement, does not, therefore, draw its "essence" from the collective bargaining agreement, but
actually manifests a total disregard for the agreement
and, therefore, we must reverse.

Article II, Section B of the agreement provides:

"This Agreement shall not be modified in whole or in
part by the parties except by an instrument, in
writing, duly executed by both parties."

It is clear, therefore, that the alleged oral agreement
could not have become a part of the basic collective bargaining agreement and cannot, therefore, support an
arbitrator's award which must interpret and apply said
agreement.

Furthermore, Article V, Section A of the agreement
provides:

"Except as this Agreement shall otherwise provide,
all terms and conditions of employment applicable on
the signing date of this Agreement as established by
the rules, regulations and/or written policies of the
Board in force on said date, shall continue to be so
applicable during the term of this Agreement. Unless
otherwise provided in this Agreement, nothing con-

---

5. The District maintains "that only the Board of School
Directors can bind the District to any contractual obligation" and
that no such action was taken. We do not reach the merits of this
contention.

tained herein, shall be interpreted and/or applied so as to eliminate, reduce, or otherwise detract from any teacher benefit existing prior to its effective date. It is likewise understood that all inherent management perogatives [sic] existing at the present time and not specifically negotiated as a part of this Agreement shall continue to be in full force and existence during the contractual period of this Agreement."

It is uncontested that: (1) the written agreement is silent in regard to the leaves of absence concerned herein; and (2) on July 1, 1973, when the agreement became effective, the existing practice of the District was to deduct salary from the teacher for the leave of absence and directly employ a substitute as required. It cannot be argued, therefore, that a term and condition of employment applicable when the agreement became effective was discontinued by the District nor can it be said that any teacher benefit existing prior to July 1, 1973 was eliminated or reduced.

We, therefore, issue the following

### ORDER

AND, NOW, this 7th day of April, 1976, the award of the arbitrator dated July 18, 1975 is hereby reversed and set aside.