**Service Personnel and Employes of the Dairy Industry v. New Sewickley Township**

644

*Herman L. Foreman* and *Susan Foreman Jordan*, for plaintiff.
*Robert E. Kunselman*, for defendant.

KLEIN, *J.*, January 23, 1978 —

## I. HISTORY

This is a civil case seeking determination of the validity of a contract provision brought pursuant to the Uniform Declaratory Judgments Act of June 18, 1923, P.L. 840, 12 P.S. §831 et seq. The case was tried by the court, sitting without a jury, under and pursuant to Pa.R.C.P. 1038. When the matter came on for trial, the parties agreed that there was no issue of fact and neither party had any evidence to present. Thus, the matter could have been disposed of by a motion for judgment on the pleadings under Pa.R.C.P. 1034.

## II. ISSUE

The sole issue before the court is whether one provision of a collective bargaining agreement entered into by and between plaintiff bargaining agent, on behalf of the road department employes of defendant township, and defendant public employer under the Public Employe Relations Act of July 23, 1970, P.L. 563 (PERA), 43 P.S. §1101.101

et seq., may lawfully be implemented by the parties. Said provision is as follows:

"ARTICLE NO. 13 — PENSION PLAN

"The Employer agrees to pay $6.00 per week per employee into the Western Pennsylvania Teamsters and Employers Pension Plan. (The $6.00 rate to be in effect for sixty (60) months. The Union can not negotiate an increase in the Pension contribution until the end of the sixty month period.)"

Neither the jurisdiction of the court nor the propriety of the proceedings has been challenged and it is clear that there is no basis for such challenges: Amer. Fed., etc. of Municipal Employees v. Philadelphia, 83 D. & C. 537 (1952).

Further, defendant concedes that the subject of the disputed provision, "pensions," is a bargainable item under section 701 of the PERA. However, defendant township contends that said provision may not be implemented due to the proscription contained in section 703 of said act, 43 P.S. §1101.703, which provides:

"The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters."

In addition, and notwithstanding the PERA, the township contends that, under general municipal law, the contract provision in question is not enforceable against the township because of existing statutory provisions relating to employe pensions

which must be strictly followed, and that the herein pension terms are not as prescribed by statute.

## III. STATUTORY AUTHORITY

The thrust of defendant's basic contention is that a township may do only what it has been authorized to do by statute and there is no such authority to pay into the Teamsters and Employers Pension Fund. Further, the township contends that where, as instantly, a statute provides a method or formal mode of making municipal contracts, such provision is mandatory and must be observed, otherwise the contract is not enforceable against the municipality.

Defendant township argues that as to "pensions" or "retirement benefits" the *only* legislative authorizations are (1) in The Second Class Township Code of May 1, 1933, P.L. 103, as amended, which provides that a township

". . . may contract with any such company [insurance company, duly authorized by law so to do], granting annuities or pensions, for the pensioning of such employes, and for such purposes, *may* agree to pay part or all of the premiums or charges for carrying such contracts, and *may* appropriate out of its treasury any money necessary to pay such premiums, or charges, or portions thereof. The supervisors are hereby authorized, enabled and permitted to deduct from the employe's pay, salary or compensation such part of the premium, or charge, as is payable by the employe, and as may be so authorized by the employe in writing." 53 P.S. §65713; and (2) in the Pennsylvania Municipal Retirement Law of February 1, 1974, P.L. 34, 53 P.S. §881.101 et seq., which provides that "Any munici-

pality *may* elect, by ordinance or resolution adopted by the tax levying body . . . to join the system [the Pennsylvania Municipal Retirement System]. . . ." 53 P.S. §881.107. (Emphasis supplied.)

We agree with defendant that New Sewickley Township, as a township of the second class, is but a political subdivision of the Commonwealth, and has, therefore, only those powers which are granted to it by the legislature: Commonwealth v. Hanzlik, 400 Pa. 134, 161 A. 2d 340 (1960).

There is, however, another statutory authorization which is even more explicit. The PERA not only authorizes, but requires, employers to negotiate and bargain with employe organizations and to enter into written agreements evidencing the result of such bargaining.

Section 701 of that act, 43 P.S. §1101.701, expressly obligates the public employer to participate, in good faith, in collective bargaining with respect to wages, hours and other terms and conditions of employment. That section reads as follows:

"Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession."

It is clear that, as a public employer, New Sewickley Township is required by the PERA to negotiate and bargain with the union. The only question then is what is encompassed by the phrase

"wages, hours and other terms and conditions of employment" as it is used in section 701. In Pennsylvania Labor Relations Board v. State College Area School District, 9 Pa. Commonwealth Ct. 229, 306 A. 2d 404 (1973), reversed on other grounds, 461 Pa. 494, 337 A. 2d 262 (1975), the Commonwealth Court explained what is meant by that terminology and included:

"The words 'other items and conditions of employment' are no doubt susceptible to varying interpretations. At one extreme they could be considered to apply to any subject which is insisted upon as a prerequistie for continued employment. At the other extreme they could be so narrowly interpreted as to have little or no consequence. We believe they refer to such things as the various physical conditions of one's working surroundings; what quantity and quality of work is required during one's work period; what safety practices prevail at and near the job site; what sick and hospital benefits are available and what vacation benefits are available; *what retirement benefits will be provided and how eligibility will be determined.*" (Emphasis supplied.) 9 Pa. Commonwealth Ct. 243, 306 A. 2d at 412.

The Commonwealth Court thus confirmed that retirement benefits are a term and condition of employment with respect to which a public employer has the authority and duty to bargain collectively with his employes and, as noted above, defendant concedes this point.

Article 13 of the collective bargaining agreement provides for retirement benefits by requiring the township to contribute $6 per week per employe into the Western Pennsylvania Teamsters and Employers Pension Plan. The township was explic-

itly authorized by section 701 of the PERA to negotiate with the union in connection with article 13 and to execute the agreement of which article 13 is a part.

The Statutory Construction Act of November 25, 1970, P.L. 707, as amended, 1 Pa.C.S.A. §101 et seq., provides in section 3 thereof, 1 Pa.C.S.A. §1932 and §1933, as follows:

"§1932.

"(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

"(b) Statutes in pari materia shall be construed together, if possible, as one statute.

"§1933.

"Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. . . ."

In the State College case, supra, the Commonwealth Court ruled that retirement benefits are bargainable under the PERA as being included in the phrase "other terms and conditions of employment." Said provision is not irreconcilable with the statutory provisions authorizing a township to provide pension benefits either via a contract with an insurance company or by joining the Pennsylvania Municipal Employes Retirement System. Applying the above-mentioned statutory construction provisions, the result is that a second class township *may* provide its employes with retirement benefits under any one of three different statutes. There is nothing irreconcilable in said statutes, especially since *no statute mandates* the grant of pension benefits to municipal employes, let alone *mandat-*

*ing* pensions in a certain form or in a certain manner.

## IV. IMPLEMENTATION UNDER THE PERA

Defendant then urges that it may not implement the disputed provision because it is inconsistent with or in conflict with said statutory provisions.

In the comprehensive and leading case on the broad issue, Pennsylvania L.R. Bd. v. State Col. A.S.D., 461 Pa. 494, 337 A. 2d 262 (1975), we have for our benefit, guide and instruction, the controlling law. In the State College case, our Supreme Court held that:

"The mere fact that a particular subject matter may be covered by legislation does not remove it from collective bargaining under section 701 if it bears on the question of wages, hours and conditions of employment. We believe that section 703 only prevents the agreement to and implementation of any term which would be in violation of or inconsistent with any *statutory directive* . . .

". . . Section 703 merely prevents a term of a collective bargaining agreement from being in violation of existing law . . . If however the General Assembly *mandates* a particular responsibility to be discharged by the board and the board alone, then the matter is removed from bargaining under section 701 even if it has direct impact upon 'wages, hours and other terms or conditions of employment.' The removal from collective bargaining results not because it necessarily falls within the purview of section 702 (in fact it may clearly be within the scope of section 701), but rather because to do otherwise would be in direct violation of a *statutory mandate* and thus excluded under section 703. . . .

"We therefore *conclude* that items bargainable under section 701 are only excluded under section 703 where other applicable statutory provisions *explicitly and definitely prohibit* the public employer from making an agreement as to that specific term or condition of employment." (Emphasis supplied.)

The full impact and the all-encompassing sweep of the court's holding in the State College case is clearly illustrated in the concurring opinion of Justice Pomeroy in that case where he said, in footnote 1:

"Sec. 703, in my view, while a limitation on the scope of Sec. 701, is not unclear. Quite simply, an agreement between the collective bargaining parties is forbidden to contain a provision the implementation of which 'would be in violation of, or inconsistent with, or in conflict with any statute' or home rule charter. 43 P.S. §1101.703. *While in a particular case there may be disagreement as to whether such violation, inconsistency or conflict would be present*, the legislative intent is clear enough. Thus I cannot agree with the majority opinion statement that items are excluded from Sec. 701 bargaining by Sec. 703 only where another statute 'explicitly and definitely prohibit[s] the public employer from making an agreement' as to that item. There is no warrant for this rewriting of that section." (Emphasis supplied.)

Instantly, we need not concern ourselves with whether there is an "explicit and definite" prohibition precluding a second class township from making an agreement to pay into the Teamsters Pension Fund, for clearly there is no such prohibition and we could, perhaps, rest our decision on that point.

However, defendant relies most heavily upon the case of Allegheny V. Sch. D. v. Allegheny V. Ed. A., 25 Pa. Commonwealth Ct. 559, 360 A. 2d 762 (1976), decided by the Commonwealth Court subsequent to the Supreme Court decision in the State College case, and we, therefore, feel compelled to discuss the matter further. Said case is cleary inapposite.

In the Allegheny Valley case, the Commonwealth Court upheld the school district-employer's contention that a collective bargaining agreement provision that teachers who are entitled to a sabbatical leave shall receive full pay during their absence on such leave could not be implemented because of the provisions of section 703 of the PERA. The decision was based upon the fact that section 1169 of the School Code of March 10, 1949, P.L. 30, as amended, 24 P.S. §11-1169, provides that: "The person on leave of absence *shall* receive one-half of his or her regular salary during the period he or she is on sabbatical leave." Act of July 30, 1963, P.L. 358, 24 P.S. §11-1169. (Emphasis supplied.)

Said section 1169 *does not* "explicitly and definitively" prohibit full pay for teachers on sabbatical leave in so many words, but it certainly does explicitly and definitively limit payment by mandatory language—"*shall* receive one-half of his or her regular salary"—as distinguished from the minimum pay example cited by the court in the State College case. (It should be emphasized that a collective bargaining agreement by teachers for less than one-half pay for teachers on sabbatical leave who are entitled to such leaves would be equally unenforceable.)

Thus, we conclude, apparently as did the Commonwealth Court, that the Supreme Court in the

State College case, held that a collective bargaining agreement provision may not be implemented if there is an explicit and definitive prohibition—as may occur where there is a *mandatory* statutory provision which is inconsistent with the bargaining agreement, meaning incompatible—that the two provisions cannot co-exist. Full pay and half pay cannot co-exist. Paying into the Teamsters Pension Fund is different from paying to an insurance company or to the Pennsylvania Municipal Employes Retirement System, but it is certainly not inconsistent with, i.e., incompatible, with such provisions, that is the provisions can co-exist, just as said two statutory provisions can and do co-exist, one with the other. Any possible doubt about the matter was resolved in the case of State Ed. Ass'n. v. Baldwin Whitehall Sch. Dist., 30 Pa. Commonwealth Ct. 149, 372 A. 2d 960 (1977).

In the Baldwin Whitehall case, the Commonwealth Court declared valid a collective bargaining provision granting teachers a "retirement allowance" notwithstanding the existence of the Public School Employes' Code which *mandates* membership for all teachers in said retirement system and provides in detail for contributions, benefits, administration, eligibility, credits, funding and supervision in a patently all-inclusive nature. However, we must confess that we agree with the dissent of Judge Mencer as to retirement benefits for school employes because the Public School Employes' Retirement Code of June 1, 1959, P.L. 350, 24 P.S. §3101 et seq., *mandates* membership *and* includes a *"maximum* single life annuity" which must inevitably be exceeded by the grant of additional benefits. And, interestingly, see the case of Carlisle Gas & Water Co. v. Carlisle Water Co.,

188 Pa. 51, 41 Atl. 321 (1898), where the court held that under statutory authority for a municipality to contract for water supply in either of two methods, it could not use both methods.

## V. DEFENDANTS OTHER CONTENTIONS

In further support of its position, defendant-township cites three additional cases: S. Union Twp. Auditors v. Supervisors, 75 D. .& C. 2d 324 (1976); Washington Arbitration Case, 436 Pa. 168, 259 A. 2d 437 (1969); and Garbin v. Brentzel, 54 D. & C. 2d 364 (1972). Each of these three cases is distinguishable or inapposite or no longer the law of Pennsylvania.

The South Union case did not involve a collective bargaining agreement under the PERA. The Washington Arbitration Case was (1) decided prior to the State College case, and (2) involved a provision to pay hospital insurance premiums for family members, not just the employes. The Garbin case was also (1) decided prior to the State College case, and (2) involved payment of premiums for false arrest insurance. It is difficult to see how false arrest insurance could be included as a "term or condition" of employment unless said phrase is to be given the extreme interpretation of involving "any subject which is insisted upon as a prerequisite for continued employment" which the Commonwealth Court rejected in the State College case.

## VI. CONCLUSION

For all these reasons, we shall enter a declaratory judgment asserting the validity of said article 13 in favor of plaintiff and against defendant.

## ORDER

And now, January 23, 1978, it is ordered, adjudged and decreed that article 13 of the collective bargaining agreement of February 15, 1977, which is to be effective from January 1, 1977, until December 31, 1979, by and between the plaintiff bargaining agent, on behalf of the covered Road Department employes of the defendant township, and the defendant, New Sewickley Township, which provides as follows:

"ARTICLE NO. 13 — PENSION PLAN

"The Employer agrees to pay $6.00 per week per employee into the Western Pennsylvania Teamsters and Employers Pension Plan. (The $6.00 rate to be in effect for sixty (60) months. The Union can not negotiate an increase in the Pension contribution until the end of the sixty month period.)"

be, and it is hereby declared to be valid and legal to the effect that it may be lawfully implemented. Verdict in favor of plaintiff and against defendant.